**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LEON WEINGRAD, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 24-4212** |
| **IBAN GLOBAL LLC** | |
| **and** | **Oral Argument Requested** |
| **LIVEFREE EMERGENCY RESPONSE, INC. D/B/A LIFEBEACON** | |
| **Defendants.** | |

---

**DEFENDANT LIVEFREE EMERGENCY RESPONSE, INC.'S**
**RENEWED MOTION TO DISMISS PLAINTIFF'S COMPLAINT**
**UNDER RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION**

Defendant LiveFree Emergency Response, Inc. d/b/a LifeBeacon ("Defendant" or "LiveFree"), through undersigned counsel, and for the reasons set forth in the accompanying Memorandum of Law, hereby moves to dismiss the Plaintiff's Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for Lack of Personal Jurisdiction.

Respectfully submitted,

**STEVE HARVEY LAW LLC**

/s/ *Stephen G. Harvey*
Stephen G. Harvey (PA 58233)
Michael E. Gehring (PA 57224)
E. Kelly Conway (PA 324626)
1880 John F. Kennedy Blvd.
Suite 1715
Philadelphia, PA 19103
(215) 438-6600
steve@steveharveylaw.com
mike@steveharveylaw.com

1

kelly@steveharveylaw.com

**BUCHALTER**
**A Professional Corporation**
R. Jeremy Adamson (*pro hac vice*)
60 E. South Temple, Suite 1200
Salt Lake City, UT  84111
Telephone:  (801) 401-8625
Email:  jadamson@buchalter.com

*Counsel for Defendant LiveFree Emergency Response, Inc. dba LifeBeacon*

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LEON WEINGRAD, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **Case No. 24-4212** |
| **v.** | |
| **IBAN GLOBAL LLC** | **Oral Argument Requested** |
| **and** | |
| **LIVEFREE EMERGENCY RESPONSE, INC. D/B/A LIFEBEACON** | |
| **Defendants.** | |

**DEFENDANT LIVEFREE EMERGENCY RESPONSE, INC.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS RENEWED MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
<u>UNDER 12(b)(2) FOR LACK OF PERSONAL JURISDICTION</u>**

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, Defendant LiveFree Emergency Response, Inc. d/b/a LifeBeacon ("Defendant" or "LiveFree"), files its Memorandum of Law in support of its Renewed Motion to Dismiss Plaintiff's Class Action Complaint ("Complaint") under Rule 12(b)(2) (the "Motion") filed by Plaintiff Leon Weingrad ("Plaintiff" or "Weingrad"), individually, and on behalf of others similarly situated,[1] and would respectfully show the Court as follows:

---

[1]     LiveFree contends that no class should be certified in this lawsuit and disputes liability as to any cause of action that might be brought by such putative class members as a class action. For purposes of the allegations made in the Complaint on behalf of "putative class members," however, as they pertain to this Motion and this Memorandum of Law, LiveFree will refer to those individuals as "putative class members," without admitting that such individuals should ultimately be joined to this lawsuit or that a class will or should be certified.

# I.    <u>TABLE OF CONTENTS</u>

I.    TABLE OF CONTENTS..................................................................................... i

II.    TABLE OF AUTHORITIES.............................................................................. ii

III.    SUMMARY OF ARGUMENT..........................................................................1

IV.    FACTUAL BACKGROUND .............................................................................1

V.    ARGUMENTS AND AUTHORITIES ...............................................................5

   A.    The Court lacks personal jurisdiction over LiveFree.......................................5

      1.    The Court does not have general jurisdiction over LiveFree because
         LiveFree is only at home in Delaware and Idaho ................................. 6

      2.    This Court does not have specific jurisdiction over LiveFree...........................8

          *a.*    *No specific jurisdiction exists because LiveFree did not*
             *make the calls Plaintiff alleges in his Complaint* ........................................ 9

          *b.*    *Because LiveFree did not call Plaintiff as alleged in the Complaint,*
             *LiveFree did not purposefully avail itself of the privilege of conducting*
             *business in Pennsylvania* ...........................................................................11

          *c.*    *No exercise of specific jurisdiction over LiveFree would be*
             *reasonable or fair based on the facts alleged by Plaintiff* .........................13

VI.    PRAYER ..........................................................................................................14

i

## II.   <u>TABLE OF AUTHORITIES</u>

**CASES**

*Asahi Metal Indus. Co. v. Superior Court of California*,
   480 U.S. 102 (1987)...................................................................................... 8, 11

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)............................................................................... 8, 12, 13

*D'Jamoos ex rel Estate of Weingeroff v. Pilatus Aircraft Ltd.*,
   566 F.3d 94 (3d Cir. 2021)............................................................................ 6, 11

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)......................................................................................... 7, 8

*Fischer v. Federal Express Corp.*
   42 F.4th 366 (3d Cir. 2022).................................................................................. 6

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011).............................................................................................. 6

*Helicopteros Nacionales de Colombia v. Hall*,
   466 U.S. 408 (1984).............................................................................................. 9

*Hertz Corp. v. Friend*,
   559 U.S. 77 (2010)................................................................................................ 7

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945)......................................................................................... 8, 13

*Marten v. Godwin*,
   499 F.3d 290 (3d Cir. 2007)......................................................................... 6, 7, 8

*Pinto v. St. Paul Fire and Marine Inc. Co.*,
   674 F.Supp.3d 176 (E.D. Pa. 2023) ..................................................................... 9

*Portella v. Life-Time Truck Products, Inc.*,
   127 F.Supp.2d 652 (E.D. Pa. 2000) ............................................................. 11, 12

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*,
   819 F.2d 434 (3d Cir. 1987)................................................................................. 5

*Renner v. Lanard Toys Ltd.*,
   33 F.3d 277 (3d Cir. 1994)........................................................................... 11, 12

*Walden v. Fiore*,
   571 U.S. 277 (2014).............................................................................................. 9

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980)......................................................................................... 8, 9

### III.    SUMMARY OF ARGUMENT

Plaintiff has asserted various claims against LiveFree in his Complaint for violations of the Telephone Consumer Protection Act ("TCPA"). Critically, there are no facts demonstrating that this Court may exercise personal jurisdiction over LiveFree. LiveFree is a Delaware corporation with its principal place of business in Idaho and, therefore, it is not "at home" in the Commonwealth of Pennsylvania. Accordingly, general jurisdiction does not exist, and it is not alleged in the Complaint. Further, LiveFree did not make the calls at issue in the Complaint. Invoking personal jurisdiction over LiveFree based on the actions of an independent third party would grossly offend traditional notions of fair play and substantial justice. As a result, there is no specific jurisdiction either. Because LiveFree is not subject to the jurisdiction of this Court, Plaintiff's Complaint must be dismissed in its entirety.

### IV.    FACTUAL BACKGROUND

LiveFree is a Delaware Corporation with its principal place of business located at 3411 Hawthorne Road, Pocatello, Idaho, 83201. See Declaration of Joshua K. Chandler ("Declaration") Ex. A, ¶ 5. LiveFree manufactures personal emergency response systems, such as its LifeBeacon product. Declaration, Ex. A, ¶ 6. LifeBeacon is a life-saving emergency fall device that allows people who are fall risks to alert first responders in the event of an emergency. Declaration, Ex. A, ¶ 6.

LiveFree does not conduct "telemarketing campaigns" as alleged in the Complaint. Declaration, Ex. A, Doc. No. 30 at 2 ¶ 7. On the contrary, LiveFree sells its products to independent dealers ("Dealers") on a wholesale, per unit basis. Declaration, Ex. A, ¶ 8. Dealers may also opt to purchase certain services from LiveFree on a per unit basis. Declaration, Ex. A, ¶ 8. The services LiveFree offers to Dealers include such things as order fulfillment, product support, payment processing, and device monitoring. Declaration, Ex. A, ¶ 8. Other than the per unit prices it charges its Dealers, LiveFree does not derive any economic benefit from the Dealers' sale of devices or monitoring contracts the

Dealer may enter into with its customers. Declaration, Ex. A, ¶ 8.

The Complaint alleges that "Plaintiff received a medical device in the mail, together with a proposed contract in the form of a proposed month to month agreement. That proposed contract clearly listed Defendant IBAN Global, LLC's ("**IBAN**") name and contact information at the top: IBAN Global, LLC 3411 Hawthorne Road, Pocatello, ID 83201 (888) 498-5839." (Complaint at ¶ 30). The Complaint falsely alleges that IBAN's principal place of business is in Pocatello Idaho, and thereby incorrectly infers that IBAN and LiveFree are the same entity. (Complaint at ¶ 30-34.)

LiveFree is not the same entity as IBAN. Declaration, Ex. A, ¶ 10. LiveFree and IBAN's only connection is the Dealer agreement between LiveFree and IBAN described above. Declaration, Ex. A, ¶ 10. IBAN is an administratively dissolved Wyoming LLC (Complaint at ¶¶ 6, 33.) IBAN conducts no business from LiveFree's location at 3411 Hawthorne Road, Pocatello, ID 83201. Declaration, Ex. A, ¶ 10.

LiveFree exercises no control over the price at which Dealers, including IBAN, market or sell LifeBeacon or monitoring services. Declaration, Ex. A, ¶ 11. Nor does LiveFree receive a commission on any product sale or monitoring contract Dealers may make with their customers. Declaration, Ex. A, ¶ 11. LiveFree's right to payment for the products and services it sells to Dealers are not dependent on a Dealer's sale of any LiveFree product. Declaration, Ex. A, ¶ 11. If a Dealer purchases a LiveFree product, it must pay for that product regardless of whether the Dealer actually sells the LiveFree product to a customer. Declaration, Ex. A, ¶ 11.

To the extent LiveFree provides payment processing to Dealers, all funds derived from the sale of devices and monitoring are remitted directly to the Dealers, minus a small fee charged by LiveFree's payment processing platform, the same as any other merchant fee charged for processing credit and debit card transactions. Declaration, Ex. A, ¶ 12.

As part of the Dealer relationship, Dealers receive a limited-use license to market and sell

LifeBeacon devices using LiveFree's trademark, but Dealers are prohibited from holding themselves out as LiveFree or LifeBeacon or from acting in any way that might suggest that the Dealer is an agent of LiveFree. Declaration, Ex. A, ¶ 13. In other words, Dealers can tell customers that they are selling the LifeBeacon device, but they cannot say they are calling from LiveFree or on behalf of LiveFree or LifeBeacon.  Declaration, Ex. A, ¶ 13.

LiveFree does not know of any Dealer purporting to call on behalf of LiveFree or LifeBeacon or implying that they are calling on behalf of LiveFree or LifeBeacon. Declaration, Ex. A, Doc. ¶ 14. To the extent any Dealer is doing so, they are violating their Dealer Agreement with LiveFree. Declaration, Ex. A, ¶ 14.

LiveFree does not systematically and continuously conduct business in Pennsylvania and has not knowingly and purposefully availed itself to Pennsylvania. Declaration, Ex. A, ¶ 15. Specifically, LiveFree: (1) has no offices or employees in Pennsylvania; (2) does not manufacture its products in Pennsylvania; (3) does not have any Dealers located in Pennsylvania; (4) does not offer any services from Pennsylvania and only offers services from Idaho; (5) does not use an automatic dialing system or automatic dialing software; (6) does not use pre-recorded messages, robocalls, or "avatars" to market or sell its products; (7) does not call persons that are registered on the National Do-Not-Call Registry; and (8) does not directly market to individuals in Pennsylvania unless responding to an individual who has submitted an inquiry and consented to be contacted by LiveFree. Declaration, Ex. A, ¶¶ 15-25.

Any individual (as opposed to a Dealer) seeking additional information about LifeBeacon or wanting to purchase a LifeBeacon on a one-off basis must first complete a form that requires them to input their personal information or to call LiveFree's sales department. Declaration, Ex. A, ¶ 24. That individual is then contacted by a live, human sales representative. Declaration, Ex. A, ¶ 24. Before LiveFree will initiate contact with an individual, they must first opt-in to such contact through

LiveFree's website or directly respond to an internet advertisement, which requires that person to consent to such contact. Declaration, Ex. A, ¶ 25.

LiveFree does not generate sales leads through telemarketing. Declaration, Ex. A, ¶ 26. LiveFree does not use or rely on Dealers for lead generation. Declaration, Ex. A, ¶ 26. LiveFree does not receive or accept leads from IBAN. Declaration, Ex. A, ¶ 26. LiveFree does not outsource or contract with others to conduct telemarketing on LiveFree's behalf. Declaration, Ex. A, ¶ 26. To the extent LiveFree directly markets its products directly to end customers, it only does so through the use of internet advertising campaigns. Declaration, Ex. A, ¶ 27. Anyone expressing interest in a LiveFree product through an internet advertising campaign must first consent to LiveFree contacting them. Declaration, Ex. A, ¶ 27. That individual is then contacted by a live, human sales representative. Declaration, Ex. A, ¶ 27. LiveFree does not initiate consumer inquiries for its products within Pennsylvania, unless such potential consumers first provide LiveFree with their contact information and consent to such contact. Declaration, Ex. A, ¶ 28.

LiveFree has never "hired" any Dealer, including IBAN, to conduct telemarketing on behalf of LiveFree. Declaration, Ex. A, ¶ 29. LiveFree has never "encouraged" any Dealer, including IBAN, to conduct telemarketing on behalf of LiveFree. Declaration, Ex. A, ¶ 30.

LiveFree has never "permitted" any Dealer, including IBAN, to conduct telemarketing on behalf of LiveFree. Declaration, Ex. A, ¶ 31. LiveFree has never given any Dealer, including IBAN, authority to act as its agent or to engage in any telemarketing on behalf of LiveFree. Declaration, Ex. A, ¶ 32.

Rather, LiveFree's agreement with its Dealers prohibit Dealers, including IBAN, from taking any action that might be reasonably interpreted by a third party as giving that Dealer authority to bind or act on behalf of LiveFree. Declaration, Ex. A, ¶ 33. IBAN has no authority to enter into agreements or to bind LiveFree with anyone, including but not limited to, end customers. Declaration, Ex. A, ¶ 34. Any agreement IBAN enters into with a third party for the purchase or sale of a LiveFree product is

directly between IBAN and that third party, not LiveFree. Declaration, Ex. A, ¶ 34. IBAN's customers do not pay LiveFree for any product or service. Declaration, Ex. A, ¶ 34.

The calls alleged in the Complaint, including the alleged calls to Plaintiff and the "putative class members," if made at all, were not made by LiveFree. Declaration, Ex. A, ¶ 4. LiveFree did not place any telephone calls to Plaintiff or any putative class members because LiveFree: (1) does not use an automatic dialing system or automatic dialing software or pre-recorded messages; (2) does not make robocalls or use "avatars" to market or sell its products; (3) does not call persons that are registered on the National Do-Not-Call Registry; and (4) does not directly market to individuals in Pennsylvania unless responding to an individual who has submitted an inquiry and consented to be contacted by LiveFree. Declaration, Ex. A, ¶¶ 20–24.

## V.    <u>ARGUMENTS AND AUTHORITIES</u>

### A.    The Court lacks personal jurisdiction over LiveFree.

A longstanding pillar of law requires a court to have personal jurisdiction over a non- resident defendant. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir. 1987). If a defendant challenges the personal jurisdiction of the court, the burden of establishing personal jurisdiction shifts to the plaintiff. *D'Jamoos ex rel Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). Personal jurisdiction over a party can exist through general jurisdiction or specific jurisdiction. *Fischer v. Federal Express Corp.*, 42 F.4th 366, 383 (3d Cir. 2022). For a corporation, general jurisdiction is only proper in states where the corporation is fairly regarded as "at home," which generally is restricted to the corporation's state of incorporation or the state of its principal place of business or when a non- resident defendant has maintained "systemic and continuous contacts" with the forum state. *Id*.; *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). Specific jurisdiction exists when sufficient "minimum contacts" exists between the claims and the defendant's activity in the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

1. **The Court does not have general jurisdiction over LiveFree because LiveFree is only at home in Delaware and Idaho.**

Plaintiff's Complaint fails to allege any basis for general jurisdiction over LiveFree, stating only "the Court has specific personal jurisdiction over Defendants because they directed their illegal calling conduct into Pennsylvania, including by calling telephone numbers associated with the District, including those with 267- area codes, and charging credit cards with billing addresses located in this District." (Complaint at ¶ 9.). General jurisdiction exists over a United States corporation only where the corporation is "at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A defendant corporation is only at home in a state where: (1) it is incorporated; (2) it maintains its principal place of business; or (3) its affiliations are so "systematic and continuous" that such state is essentially rendered the corporation's home. *Fischer*, 42 F.4th at 383; *Marten*, 499 F.3d at 296.

Pennsylvania cannot exercise personal general jurisdiction over LiveFree based on its state of incorporation (Delaware) or its principal place of business (Idaho). *See Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (stating that a "company's principal place of business, often called the 'nerve center' is 'the place where a corporation's officers direct, control, and coordinate the corporation's activities"). It is undisputed that LiveFree's "nerve center" exists in Idaho. Declaration, Ex. A, ¶ 5. LiveFree's headquarters, and only office, is located in Pocatello, Idaho. *See* Declaration, Ex. A, ¶ 5.

Because LiveFree is incorporated in Delaware and maintains its principal place of business in Idaho, general jurisdiction over LiveFree in Pennsylvania could only exist if LiveFree's contacts with Pennsylvania are so "systematic and continuous" that it can be considered at home in Pennsylvania. *Marten*, 499 F.3d at 296. Specifically, Plaintiff must show LiveFree's "corporate operations within [Pennsylvania are] so substantial and of such a nature as to justify suit…on causes of action arising from dealings entirely distinct from those activities." *Daimler AG v. Bauman*, 571 U.S. 117, 118-19 (2014). In *Bauman*, the Supreme Court held that Daimler AG was not subject to

general jurisdiction in California, despite its significant sales in California because:

> Neither Daimler nor [Daimler's parent] is incorporated in California, nor does either entity have its principal place of business there. If Daimler's California activities sufficed to allow adjudication of this Argentina-rooted case in California, the same global reach would presumably be available in every other State in which [Daimler's parent's] sales are sizable. No decision of this Court sanctions a view of general jurisdiction so grasping.

*Id.*

To the extent LiveFree has any contacts with Pennsylvania, they are even more attenuated than those the Supreme Court rejected in *Bauman*, finding that they did not support personal jurisdiction. Here, LiveFree: (1) has no offices or employees in Pennsylvania; (2) does not manufacture its products in Pennsylvania; (3) does not have any Dealers located in Pennsylvania (including IBAN who is located in Florida); (4) does not offer any services from Pennsylvania, only from Idaho; and (5) does not directly market to individuals in Pennsylvania unless responding to an individual who has submitted an inquiry and consented to be contacted by LiveFree. Declaration, Ex. A, Doc. No. 30 at 3–4 ¶¶ 16–20. Finding general jurisdiction as to LiveFree under these facts would undo *Bauman* and render LiveFree "at home" in all fifty states regardless of its limited contacts with states outside of Delaware and Idaho. *Bauman* makes clear that finding general jurisdiction on these facts is improper. *See Daimler*, 571 U.S. at 118-19.

### 2. This Court does not have specific jurisdiction over LiveFree.

Plaintiff must overcome three hurdles to justify the exercise of specific jurisdiction over LiveFree and satisfy the demands of due process. First, Plaintiff must show that the dispute between the parties arises out of, or is related to, LiveFree's forum-based activities. *Marten*, 499 F.3d at 296. Second, the Plaintiff must show that, LiveFree, the non-resident defendant has purposefully established "minimum contacts" with Pennsylvania. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 105

(1987). Finally, Plaintiff must show that "maintenance of the suit [against LiveFree in Pennsylvania] does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.

An essential goal of the "minimum contacts" test is to protect the non-resident defendant. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). To find minimum contacts, the Court must determine that the non-resident defendant has purposely availed itself of the privilege of conducting activities within the forum state, and thus invoked the benefits and protection of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). This "purposeful availment" requirement ensures that a non-resident defendant will not be hailed into a forum based solely on "random," "fortuitous," or "attenuated" contacts or the "unilateral activity of another party or a third person." *Id.* at 475; *see also Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 417 (1984); *World-Wide Volkswagen*, 444 U.S. at 298. Some purposeful, overt act is required by a non-resident defendant to subject it to the possibility of being hailed into a foreign court. *Pinto v. St. Paul Fire and Marine Inc. Co, 674 F.Supp.3d 176, 183 (E.D. Pa. 2023).*

### a. No specific jurisdiction exists because LiveFree did not make the calls Plaintiff alleges in his Complaint.

To establish specific jurisdiction as to LiveFree, Plaintiff must show that his claims arise out of LiveFree's *own* activities in Pennsylvania, not those of a third party. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014). Here, the evidence conclusively establishes that the alleged calls to Plaintiff and the purported putative class members on the National Do Not Call Registry were not made by LiveFree. Declaration, Ex. A, ¶ 4. Any individual (as opposed to a Dealer) seeking additional information about LifeBeacon or wanting to purchase a LifeBeacon on a one-off basis must have first completed a form requiring them to provide their personal information or to call LiveFree's sales department themselves. *See* Declaration, Ex. A, ¶ 24. Only then would that individual be contacted by LiveFree's live, human sales representatives. *See id.* at ¶ 24. Indeed, before LiveFree will initiate contact with

8

an individual, they must consent to such contact through LiveFree's website or through an internet advertisement, which requires that individual's consent. *See id.* at ¶ 25.

Having rebutted Plaintiff's allegation that LiveFree called Plaintiff itself, the only basis remaining in Plaintiff's Complaint for TCPA liability is his allegation that IBAN acted as LiveFree's agent and called Plaintiff on LiveFree's behalf (an allegation that LiveFree vehemently denies). However, as a matter of black-letter law, whether Plaintiff's claims are "related" to LiveFree's forum-based activities cannot be based on the unilateral activity of a third-party. *Hall*, 466 U.S. at 417 (stating that the "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state").

Here, there is no basis for finding that IBAN's (or any other Dealer's) alleged actions were anything other than its own unilateral activities. Specifically, other than the per-unit prices charged to Dealers, LiveFree does not derive any economic benefit from the Dealers' sale of devices or monitoring contracts Dealers may enter into with their customers. Declaration, Ex. A, ¶ 8. LiveFree exercises no control over the price at which Dealers, including IBAN, market or sell LifeBeacon or monitoring services. Declaration, Ex. A, ¶ 11. Nor does LiveFree receive a commission on any product sale or monitoring contract Dealers may make to their customers. Declaration, Ex. A, ¶ 11. LiveFree's right to payment for the products and services it sells to Dealers are not dependent on a Dealer's sale of any LiveFree product. Declaration, Ex. A, ¶ 11. If a Dealer purchases a LiveFree product, it must pay for that product regardless of whether the Dealer actually sells the LiveFree product to a customer. Declaration, Ex. A, ¶ 11.

Additionally, contrary to Plaintiff's inference that LiveFree and IBAN are the same entity due to a matching address on a contract, IBAN does not operate from LiveFree's address or share that address with LiveFree. Declaration, Ex. A, ¶ 10. Further, Dealers are prohibited from holding themselves out as LiveFree or LifeBeacon or from acting in any way that might suggest that the Dealer

is an agent of LiveFree. Declaration, Ex. A, ¶ 13. LiveFree has never "hired" any Dealer, including IBAN, to conduct telemarketing on behalf of LiveFree. Declaration, Ex. A, ¶ 29. LiveFree has never "encouraged" any Dealer, including IBAN, to conduct telemarketing on behalf of LiveFree. Declaration, Ex. A, ¶ 30. LiveFree has never "permitted" any Dealer, including IBAN, to conduct telemarketing on behalf of LiveFree. Declaration, Ex. A, ¶ 31. And LiveFree has never given any Dealer, including IBAN, authority to act as its agent or to engage in any telemarketing on behalf of LiveFree. Declaration, Ex. A, ¶ 32. As a result, even if such calls were made by IBAN, or any other Dealer, such contact is the exact type of unilateral third-party conduct that cannot be considered and cannot give rise to specific jurisdiction. *See Hall*, 466 U.S. at 417.

> **b. Because LiveFree did not call Plaintiff as alleged in the Complaint, LiveFree did not purposefully avail itself of the privilege of conducting business in Pennsylvania.**

To determine whether a foreign defendant has purposefully established minimum contacts with the forum state, the Third Circuit employs the "stream of commerce" test. *See Renner v. Lanard Toys Ltd.*, 33 F.3d 277, 280 (3d Cir. 1994); *see also Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 105 (1987). Under the "stream of commerce" theory, specific jurisdiction is asserted over a non-resident defendant who "injected goods, albeit indirectly, into the forum state and either derived a substantial benefit from the forum state or had a reasonable expectation of deriving a substantial benefit from it." *Portella v. Life-Time Truck Products, Inc*., 127 F.Supp.2d 652, 656 (E.D. Pa. 2000). In *Asahi Metal*, the Supreme Court presented three different frameworks of purposeful availment through the stream of commerce theory, none of which was endorsed by a majority of the court. 480 U.S. at 107. Of the three frameworks identified in *Asahi Metal*, the Third Circuit has applied the Justice O'Connor standard and the Justice Brennan standard, as the tests to determine if a defendant has created minimum contacts with a forum based on a stream of commerce analysis. *See D'Jamoos ex rel Estate of Weingeroff*, 566 F.3d at 105 n. 5; *see also Renner*, 33 F.3d at 283–84.

Under Justice O'Connor's standard, which is more stringent, a defendant is only subject to jurisdiction if its "placement of a product in the stream of commerce" was "accompanied by some "additional conduct... indicating an intent or purpose to serve the market in the forum State," such as: (1) "designing the product for the market in the forum State", (2) "advertising in the forum state", (3) "establishing channels for providing regular advice to customers in the forum state" or (4) "marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Portella*, 127 F.Supp.2d at 657. Under Justice Brennan's standard, a defendant is subject to jurisdiction if: (1) there is a "regular and anticipated flow of products from manufacture to distribution to retail sale"; and (2) "the defendant is aware that the final product is being marketed in the forum state." *Renner*, 33 F.3d at 280–81.

Under both stream of commerce standards, LiveFree has not purposefully established minimum contacts with the forum state. LiveFree did not call Plaintiff or any putative class member, and therefore, cannot be said to have purposefully availed itself of the privilege of conducting activities withing Pennsylvania or invoking the benefits and protects of its laws. *See Burger King Corp.*, 471 U.S. at 474-75.

Although LiveFree injected goods indirectly in Pennsylvania, it did not obtain a "substantial benefit" from Pennsylvania or have a reasonable expectation of deriving a substantial benefit from it. Under the Justice O'Connor standard, LiveFree did not have an intent or purpose to serve the market in Pennsylvania. LiveFree: (1) did not design the product for the Pennsylvania market, (2) did not advertise in Pennsylvania, (3) did not establish channels for providing regular advice to customers in Pennsylvania, and (4) did not agree for IBAN to be a sale agent specifically for the Pennsylvania market. Declaration, Ex. A, ¶ 15-19, 29-32.

Likewise, under Justice Brennan's standard, LiveFree: (1) did not anticipate a regular flow of products to Pennsylvania, and (2) was not aware that the product was marketed in Pennsylvania.

LiveFree sells its products to independent dealers ("Dealers") on a wholesale, per unit basis. Dealers may also opt to purchase certain services from LiveFree on a per unit basis. Declaration, Ex. A, ¶ 8. The services LiveFree offers to Dealers include such things as order fulfillment, product support, payment processing, and device monitoring. Declaration, Ex. A, ¶ 8. Other than the per unit prices it charges its Dealers, LiveFree does not derive any economic benefit from the Dealers' sale of devices or monitoring contracts the Dealer may enter into with its customers. Declaration, Ex. A, ¶ 8. LiveFree exercises no control over the price at which Dealers, including IBAN, market or sell LifeBeacon or monitoring services. Declaration, Ex. A, ¶ 11. Nor does LiveFree receive a commission on any product sale or monitoring contract Dealers may make to their customers. Declaration, Ex. A, ¶ 11. LiveFree's right to payment for the products and services it sells to Dealers are not dependent on a Dealer's sale of any LiveFree product. Declaration, Ex. A, ¶ 11. If a Dealer purchases a LiveFree product, it must pay for that product regardless of whether the Dealer actually sells the LiveFree product to a customer. Declaration, Ex. A, ¶ 11. LiveFree has not knowingly and purposefully availed itself to the Commonwealth of Pennsylvania. Declaration, Ex. A, ¶ 15. Therefore, there is no personal jurisdiction under either stream of commerce theory.

### c. No exercise of specific jurisdiction over LiveFree would be reasonable or fair based on the facts alleged by Plaintiff.

Plaintiff cannot show that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316. The minimum contacts requirement protects non-resident defendants and ensures that they will not be hailed into a jurisdiction based solely on "random," "fortuitous," or "attenuated" contacts or the "unilateral activity of another party or a third person." *Burger King Corp.*, 471 U.S. at 474-75.

Exercising jurisdiction over LiveFree here diametrically offends the due process to which foreign defendants are entitled and the purpose for which courts are required to find specific jurisdiction before entertaining a plaintiff's claims. Again, LiveFree is a Delaware Corporation with

its principal place of business in Idaho. Declaration, Ex. A, ¶ 5. It has no offices or employees in Pennsylvania, does not manufacture its products in Pennsylvania, does not have any Dealers located in Pennsylvania, and does not offer any services from Pennsylvania. Declaration, Ex. A, ¶¶ 15–20. LiveFree did not make the calls alleged in the Complaint, either to Plaintiff or to any "putative class members." Declaration, Ex. A, ¶ 4. It does not control any Dealer's sales or marketing efforts. *See* Declaration, Ex. A, ¶¶ 29–31. And it did not authorize IBAN or any other Dealer to make the alleged calls to Plaintiff. *See* Declaration, Ex. A, ¶ 32. Accordingly, continued maintenance of this suit in Pennsylvania works a substantial injustice to LiveFree and violates any notion of fair play to which LiveFree is entitled.

## VI.  <u>PRAYER</u>

For all the foregoing reasons, LiveFree respectfully requests that this Court grant its Renewed

Motion to Dismiss Plaintiff's Complaint under Rule 12(b)(2) for lack of personal jurisdiction, dismiss

Plaintiff's lawsuit, and grant LiveFree any other further relief to which it may show itself justly

entitled, in law or in equity.

Respectfully submitted,

**STEVE HARVEY LAW LLC**

<u>/s/ *Stephen G. Harvey*</u>
Stephen G. Harvey (PA 58233)
Michael E. Gehring (PA 57224)
E. Kelly Conway (PA 324626)
1880 John F. Kennedy Blvd.
Suite 1715
Philadelphia, PA 19103
(215) 438-6600
steve@steveharveylaw.com
mike@steveharveylaw.com
kelly@steveharveylaw.com

**BUCHALTER**
**A Professional Corporation**
R. Jeremy Adamson (*pro hac vice*)
60 E. South Temple, Suite 1200
Salt Lake City, UT  84111
Telephone:  (801) 401-8625
Email:  jadamson@buchalter.com

*Counsel for Defendant LiveFree Emergency*
*Response, Inc. dba LifeBeacon*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, June 16, 2025, I caused true and correct copies of the foregoing document to be electronically filed using the Court's Electronic Case Filing System, where they are available for viewing and downloading by all counsel of record.

<u>/s/ Stephen G. Harvey</u>
Stephen G. Harvey

## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEON WEINGRAD, individually and on behalf of all others similarly situated,** | |
| **Plaintiff,** | **Case No. 24-4212** |
| **v.** | |
| **IBAN GLOBAL LLC** | |
| **and** | |
| **LIVEFREE EMERGENCY RESPONSE, INC. D/B/A LIFEBEACON** | |
| **Defendants.** | |

### DECLARATION OF JOSHUA K. CHANDLER IN SUPPORT OF LIVEFREE EMERGENCY RESPONSE, INC.'S MOTION TO DISMISS COMPLAINT

I hereby declare under penalty of perjury under the laws of the United States of America that:

1.      My name is Joshua K. Chandler. I am over 21 years of age, of sound mind, and competent to make this declaration. The facts stated in this Declaration are within my personal knowledge and are true and correct.

2.      I am the President and Co-Founder of LiveFree Emergency Response, Inc. ("**LiveFree**"), the Defendant in the above-styled lawsuit.

3.      I have reviewed the Class Action Complaint (the "**Complaint**") filed on August 14, 2024, by Leon Weingrad ("**Plaintiff**" or "**Weingrad**"), individually, and on behalf of others similarly situated, and I dispute the allegations contained in the Complaint, including but not limited to, those upon which Plaintiff alleges personal jurisdiction.

4.      LiveFree did not make the calls alleged in the Complaint, either to Plaintiff or to any "putative class members" on the National Do Not Call Registry. Nor did LiveFree authorize any other person or entity to make the calls alleged in the Complaint, including but not limited to, Iban Global,

LLC ("**IBAN**").

5.      LiveFree is a Delaware Corporation with its principal place of business located at 3411 Hawthorne Road, Pocatello, Idaho 83201.

6.      LiveFree manufactures personal emergency response systems, such as its LifeBeacon product. LifeBeacon is a life-saving emergency fall device that allows people who are fall risks to alert first responders in the event of an emergency.

7.      LiveFree does not conduct "telemarketing campaigns" as alleged in the Complaint.

8.      On the contrary, LiveFree sells its products to independent dealers ("Dealers") on a wholesale, per unit basis. Dealers may also opt to purchase certain services from LiveFree on a per unit basis. The services LiveFree offers to Dealers include such things as order fulfillment, product support, payment processing, and device monitoring. Other than the per unit prices it charges its Dealers, LiveFree does not derive any economic benefit from the Dealers' sale of devices or monitoring contracts the Dealer may enter into with its customers.

9.      The Complaint falsely alleges that IBAN's principal place of business is in Pocatello Idaho, and thereby incorrectly infers that IBAN and LiveFree are the same entity. (Complaint at ¶ 30-34.)

10.     LiveFree is not the same entity as IBAN. LiveFree and IBAN's only connection is the Dealer agreement between LiveFree and IBAN described above. IBAN conducts no business from LiveFree's location at 3411 Hawthorne Road, Pocatello, ID 83201.

11.     LiveFree exercises no control over the price at which Dealers, including IBAN, market or sell LifeBeacon or monitoring services. Nor does LiveFree receive a commission on any product sale or monitoring contract Dealers may make to their customers. LiveFree's right to payment for the products and services it sells to Dealers are not dependent on a Dealer's sale of any LiveFree product. If a Dealer purchases a LiveFree product, it must pay for that product regardless of whether

the Dealer actually sells the LiveFree product to a customer.

12.     To the extent LiveFree provides payment processing to Dealers, all funds derived from the sale of devices and monitoring are remitted directly to the Dealers, minus a small payment processing fee charged by LiveFree's payment processing platform, the same as any other merchant fee charged for processing credit and debit card transactions.

13.     As part of the Dealer relationship, Dealers receive a limited-use license to market and sell LifeBeacon devices using its trademark, but Dealers are prohibited from holding themselves out as LiveFree or LifeBeacon or from acting in any way that might suggest that the Dealer is an agent of LiveFree. In other words, Dealers can tell customers that they are selling the LifeBeacon device, but they cannot imply that they are calling on behalf of LiveFree or LifeBeacon.

14.     LiveFree does not know of any Dealer purporting to call on behalf of LiveFree or LifeBeacon or implying that they are calling on behalf of LiveFree or LifeBeacon. To the extent any Dealer is doing so, they are violating their Dealer Agreement with LiveFree.

15.     LiveFree does not systematically and continuously conduct business in Pennsylvania. LiveFree has not knowingly and purposefully availed itself to the Commonwealth of Pennsylvania.

16.     LiveFree has no offices or employees in Pennsylvania.

17.     LiveFree does not manufacture its products in Pennsylvania.

18.     LiveFree does not have any Dealers located in Pennsylvania.

19.     LiveFree does not offer any services from Pennsylvania.

20.     LiveFree does not use an automatic dialing system or automatic dialing software. It does not use pre-recorded messages, it does not make robocalls, and it does not use "avatars" to market or sell its products.

21.     LiveFree does not call persons that are registered on the National Do-Not- Call Registry.

22.     LiveFree's website, www.lifebeacon.com, is designed for Dealers. Individuals cannot purchase LifeBeacon via LiveFree's website. The website does not market to individual customers, including individuals living in Pennsylvania.

23.     LiveFree's website only provides basic information about LiveFree's products.

24.      Any individual (as opposed to a Dealer) seeking additional information about LifeBeacon or wanting to purchase a LifeBeacon on a one-off basis must first complete a form that requires them to input their personal information or to call LiveFree's sales department. That individual is then contacted by a live, human sales representative.

25.     Before LiveFree will initiate contact with an individual, they must first opt-in to such contact through LiveFree's website or directly respond to an internet advertisement, which requires that person to consent to such contact.

26.     LiveFree does not generate sales leads through telemarketing. LiveFree does not use or rely on Dealers for lead generation. LiveFree does not receive or accept leads from IBAN. LiveFree does not outsource or contract with others to conduct telemarketing on LiveFree's behalf.

27.     To the extent it directly markets its products directly to end customers, it only does so through the use of internet advertising campaigns. Anyone expressing interest in a LiveFree product through an internet advertising campaign must first consent to LiveFree contacting them. That individual is then contacted by a live, human sales representative.

28.     LiveFree does not initiate consumer inquiries for its products within Pennsylvania, unless such potential consumers first provide LiveFree with their contact information and consent for such contact.

29.     LiveFree has never "hired" any Dealer, including IBAN, to conduct telemarketing on behalf of LiveFree.

30.     LiveFree has never "encouraged" any Dealer, including IBAN, to conduct

telemarketing on behalf of LiveFree.

31.     LiveFree has never "permitted" any Dealer, including IBAN, to conduct telemarketing on behalf of LiveFree.

32.     LiveFree has never given any Dealer, including IBAN, authority to act as its agent or to engage in any telemarketing on behalf of LiveFree.

33.     LiveFree's agreement with its Dealers prohibit Dealers, including IBAN, from taking any action that might be reasonably interpreted by a third party as giving that Dealer authority to bind or act on behalf of LiveFree.

34.     IBAN has no authority to enter into agreements or to bind LiveFree with anyone, including but not limited to, end customers. Any agreement IBAN enters into with a third party for the purchase or sale of a LiveFree product is directly between IBAN and that third party, not LiveFree. IBAN's customers do not pay LiveFree for any product or service.

35.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


JOSHUA K. CHANDLER