# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. 24-4212 |
| v. | |
| IBAN GLOBAL LLC | |
| and | |
| LIVEFREE EMERGENCY RESPONSE, INC. D/B/A LIFEBEACON | |
| Defendants. | |

**Plaintiff's Response in Opposition To Defendant
LiveFree Emergency Response, Inc.'s Motion to Dismiss**

## I.    INTRODUCTION

Defendant LiveFree Emergency Response, Inc.'s (LiveFree or Defendant)'s motion to dismiss must fail because the Plaintiff has pled sufficient facts to demonstrate the exercise of specific personal jurisdiction in Pennsylvania against LiveFree. And although LiveFree alleges that co-Defendant IBAN Global LLC made the calls at issue, the fact remains that the illegal telemarketing calls at issue were sent to a Pennsylvania telephone number and were made for LiveFree's benefit, including because *LiveFree was the entity that charged the Plaintiff's credit card*, which possesses a Pennsylvania billing address. The jurisdictional allegations here are of the same type that Courts routinely held are sufficient in cases of telemarketing conduct like that alleged here. In arriving at that fact, LiveFree performs its core business, that of selling and monitoring "life alert" style devices, to individuals across the United States, including Pennsylvania. And the conduct alleged here–marketing for those very same goods and services– indisputably was aimed at Pennsylvania. Courts across the country, including this one, have held sufficient such allegations in permitting the exercise of specific personal jurisdiction against the caller and ultimate seller of goods via telephone. This Court should reject Defendant's general denial of liability couched as an attack on personal jurisdiction.

## II.    LEGAL STANDARD

The standard for a motion to dismiss under Rule 12(b)(2) is well-established before this Court. In ruling on a Rule 12(b)(2) motion, the court must accept the allegations in the complaint as true and draw all reasonable inferences supported by the well pleaded factual allegations in the plaintiff's favour. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 151 (3d Cir. 1992). However, a Rule 12(b)(2) challenge is unique in that it is not limited to the four corners of the pleading and the Court may consider additional evidence proffered by both parties, including

affidavits, evidence, and judicially noticeable records. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). And although the plaintiff will ultimately bear the burden of demonstrating personal jurisdiction at trial, he need not make such a showing at the pleadings stage. *Id.* Rather, the Plaintiff must merely allege sufficient facts to establish a *prima facie* case of jurisdiction over the defendant and is entitled to a reduced standard when that defendant is a corporation, as here. *Compagnie Des Bauxites de Guinee v. L'Union Atlantique S.A. d'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983) ("A plaintiff who is a total stranger to a corporation should not be required, unless he has been undiligent, to try such an issue on affidavits without the benefit of a full discovery.").

### III.  ARGUMENT

A.  *Despite failing to produce documents, even after this Court's order, the jurisdictional discovery Defendant has produced supports jurisdiction. This Court should follow Traylor, where the parties' agreement demonstrated jurisdiction, in line with other similar precedent, and the evidence developed, and deny the motion.*

As this Court recognized when it denied the Defendant's first motion to dismiss, a motion it now simply resubmits to the Court without any additional argument or evidence:

> It is not clear whether the Court has jurisdiction over Defendant LiveFree Emergency Response ("Live Free") because Plaintiff has not established, with affidavits or other evidence, the nature of the relationship, if any, between LiveFree and IBAN Global LLC. In a supplemental filing, Plaintiff provided the Court with the *Traylor* case. While that case is similar to this one, it is distinguishable for two reasons. First, the court in *Traylor* had more facts before it to discern the agency relationship between LiveFree and its dealer. Second, LiveFree had direct contact with the plaintiff. *Traylor*, 2024 WL 4943042, at *2-6.

On June 23, 2025, this Court further compelled LiveFree to provide responses to the Plaintiff's interrogatories and document requests by June 30, 2025. On June 30, the Defendant made its production, attached herein as Exhibit A, and stated that "LiveFree will produce its agreement with IBAN." Despite this promise of production, LiveFree *never produced its*

*agreement with IBAN.* LiveFree's failure to do so is critical, and warrants denial of LiveFree's motion, among other reasons, because the *Traylor* court considered the "LiveFree Dealer Application and Agreement" in determining whether there was an agency relationship and, correspondingly, personal jurisdiction. *Traylor v. Livefree Emergency Response Inc.*, No. 1:24-CV-10329-IT, 2024 WL 4943042, at *1 n.1 (D. Mass. Dec. 3, 2024).

That LiveFree said it would produce the agreement, but did not, further warrants denial of LiveFree's motion because it shows that LiveFree has something to hide. This Court said it would need to have "more facts" to discern the agency relationship between LiveFree and its dealer, including the very documents the *Traylor* court considered in terms of the parties' agreement that this Court lacks here because Defendant has refused to produce it. Indeed, in *Traylor*, the Court remarked that the written contract contained many hallmarks of agency, including that Q Synergy (or IBAN) would not "purchase" products from LiveFree until such point as a sale was made to a customer. *Id.* at *4. If its agreement with IBAN is the same agreement as the one with Q Synergy, this Court should follow *Traylor*.

Even putting aside Defendant's failure to produce its agreement with IBAN, the same facts on which the *Traylor* court held personal jurisdiction was appropriate are here present, as confirmed through the Declaration of Leon Weingrad, which not only confirm that LiveFree had direct contact with the Plaintiff, but that as *recently as today* LiveFree's employee made the statement that *LiveFree and IBAN are the same company* on a call to the toll-free telephone number included in the materials the Plaintiff received. Among other factors, as in *Traylor*:

- The product marketed to Mr. Weingrad was produced and shipped by LiveFree.
- The product was sent by LiveFree, bearing its Idaho return address.
- On the proposed contract the Plaintiff received, the purported contract lists "IBAN Global LLC" but LiveFree's Idaho Address.
- The contract also directs the product to be returned to LiveFree at LiveFree's address, if necessary.

- When Mr. Weingrad made the purchase for the LifeBeacon monitor, LiveFree both charged him for and mailed him the device. The product was charged by LiveFree.
- The charge was made to the Plaintiff's credit card with a Pennsylvania billing address.
- The telephone numbers printed on the materials in the package go back to LiveFree's representatives
- When the Plaintiff called the Defendant's number on the paperwork, LiveFree's agents *admitted that LiveFree, IBAN, and LifeBeacon were all the same company.*

*See generally* Weingrad Dec. As in *Traylor*, the foregoing factors are sufficient to support a finding of agency:

> But the facts pled here—which LiveFree does not directly contest—are that Traylor was provided a number for a LiveFree dealer support agent via a call from Q Synergy and that a product purchased on a call from Q Synergy was charged by LiveFree, sent by LiveFree, and meant to be returned to LiveFree, if necessary. LiveFree cannot sidestep the question of whether Q Synergy was its agent by merely insisting that Q Synergy was prohibited from revealing the nature of its relationship with LiveFree.

*Traylor*, 2024 WL 4943042, at *4. It bears repeating that here, LiveFree itself stated that the nature of its relationship with IBAN was that they were the "same company." As this Court has also noted, in crediting a manifestly similar declaration when considering a similar challenge to personal jurisdiction *qua* agency and denying a legally identical motion to dismiss under the same theory advanced here:

> On the merits, this Court finds that the factual allegations of the Complaint are sufficient-at this stage- to confer personal jurisdiction. The Complaint alleges that she received a call from Happy Quote "at Defendant Quest's direction." Plaintiff alleges that various of the people she spoke to on the phone were Quest employees and that the call waiting message identified that she was on hold with Quest. There is ample case law, cited by Plaintiff, which would suggest that these allegations, if true, could result in both personal jurisdiction in the Eastern District of Pennsylvania and substantive liability under the relevant statute.
>
> The grounds from which Quest seeks dismissal are essentially coterminous with Plaintiffs theory of liability against it. Effectively, Quest seeks dismissal by saying "we didn't do what the Complaint says we did!" That may well be true. But the sort of discovery which would be needed to aid an early jurisdictional dismissal on such fact-laden grounds would be barely less burdensome (if at all) than that needed to resolve the claims against Quest on their merits. For that reason, the Court thinks it would not be in the interest of judicial economy to create dual discovery tracks.

*Murch v. Quest Health Solutions, LLC*, No. 2:24-cv-05478-GAW, ECF No. 39 (E.D. Pa. June 2, 2025). And just as in LiveFree, other documents found in the Defendant's production and produced pursuant to the Court's order of jurisdictional discovery support a finding of agency. Indeed, LiveFree has been on notice of its vendor IBAN's conduct in conducting illegal telemarketing calls since 2022, including from multiple Pennsylvania residents. LiveFree has also been on notice of Q Synergy's conduct, the same vendor in *Traylor*, from another Pennsylvania resident, Gerard Jackson, since July of 2020. LiveFree was also informed of another set of calls, from an unidentified vendor, in January of 2023. LiveFree was also sued out of the Court of Common Pleas of Mifflin County, alleging nearly the same allegations as here, although the vendor is not named. In short, LiveFree knew that it had a compliance problem with vendors generally and IBAN specifically for close to four years prior to the calls that are the subject of this litigation, and incredibly appears to continue to do business with IBAN to this day, despite IBAN's complete default and lack of participation in this litigation.

These previous notifications and lawsuits alleging that Defendant's vendor, IBAN, was violating the TCPA, shows that LiveFree knew that it had a vendor compliance problem but nevertheless failed to do anything to rectify it, including, most obviously, by terminating IBAN. It has doubled down and continued in such conduct during the pendency of this litigation, including by rewarding IBAN for its default here, by continuing to do business with IBAN. As such, this discovery reveals that LiveFree ratified IBAN's conduct, including that conduct which is alleged to have violated the TCPA, including specific conduct aimed by IBAN and accepted by LiveFree *to and at Pennsylvania residents and telephone numbers. See, e.g.*, *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 661 (4th Cir. 2019) (holding a finding of agency was proper when jury was presented with evidence "showing that Dish knew of SSN's statutory violations

and its failure to comply with Dish's purported instructions" and where the evidence "also showed that Dish failed to respond to these concerns in any serious way and was profiting handsomely from SSN's sales tactics."); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 788 (N.D.W. Va. 2017) (holding that plaintiff adduced substantial evidence that defendant knew that its vendor was calling a cell phone and accepted the benefit of those calls); *Braver v. NorthStar Alarm Servs., LLC*, No. CIV-17-0383-F, 2019 WL 3208651, at *13 (W.D. Okla. July 16, 2019) (holding ratification was established when alarm company accepted benefits generated by a dealer's calls and which led to 150 new customers).

To this point, LiveFree's answers to interrogatories, attached herein as Exhibit A, show that the exercise of personal jurisdiction as against LiveFree in Pennsylvania is hardly attenuated. Approximately 1% of its revenues originate from customers located in Pennsylvania and LiveFree estimates that almost 4% of the emergency calls it services are attributable to Pennsylvania. Notably, the Pennsylvania Supreme Court has held that that even .005% of revenue attributable to the state of Pennsylvania did *not* constitute a *de minimis* amount of business and subjects a company to jurisdiction in Pennsylvania, reasoning that "the percentage of a defendant corporation's national revenue derived in the forum county is not alone sufficient to determine the corporation did not "regularly conduct business" there for purposes of Rule 2179(a)(2). We have explicitly held, and we reaffirm here, that "it is the word 'regularly' which we are construing and not 'principally.' A corporation may perform acts 'regularly' even though these acts make up a small part of its total activities." *Hangey v. Husqvarna Pro. Prods., Inc.*, 304 A.3d 1120, 1143 (Pa. 2023); *accord Canter v. Am. Honda Motor Corp.*, 426 Pa. 38, 44, 231 A.2d 140, 143 (1967) (holding that "1 to 2 percent of the total business" was sufficient to support a finding that a corporation "regularly" conducted business in a county).

Indeed, critically, when the Plaintiff called the number on the paperwork he received, the Defendant's representatives *admitted that LiveFree, IBAN, and LifeBeacon* were "all the same company," casting doubt on Mr. Chandler's declaration and further cementing the appropriateness of jurisdiction *qua* agency here. Indeed, this admission is *even more powerful* than the call in *Traylor*, where the plaintiff there was merely "provided a number which connected him to a LiveFree dealer support agent" and did not obtain, as here, an admission by LiveFree's employee that IBAN and LiveFree are all the same company, *on the very same day that this opposition was filed*. *Traylor*, 2024 WL 4943042, at *4. Defendant's employee's own admission that IBAN is the same company as LiveFree is simply further evidence that IBAN was acting as LiveFree's agent when it placed the calls at issue. Its employee's representation on the very telephone number it provided and included in the equipment shows that, in the course of normal day to day operations, that LiveFree does not consider IBAN to be distinct except under circumstances, such as those here, where it is convenient for LiveFree.

There can be no question therefore, on the evidence presented here, that the Plaintiff has demonstrated at least a colorable theory of agency, including through the Defendant's own evidence and admissions, such as to justify the imposition of personal jurisdiction against LiveFree for the calls that IBAN placed to Pennsylvania telephone numbers.

B.    *The Plaintiff has unquestionably pled sufficient facts to justify the exercise of specific personal jurisdiction against LiveFree in Pennsylvania based on calls he received to his phone number in Pennsylvania, which resulted in a credit card charge from LiveFree. Discovery must resolve any ancillary questions intertwined with the merits.*

Defendant LiveFree, in essence, adopts in its motion the classic "I didn't do it" defense, but styles it instead as an attack on this Court's exercise of personal jurisdiction over the Defendant because the Defendant (allegedly) did not call Plaintiff, but rather because co-Defendant IBAN did. But such doubt as to liability is more properly the subject of a jury trial or

at the very least a motion for summary judgment. Notwithstanding the foregoing allegations and additionally developed evidence, LiveFree claims that it is not subject to specific personal jurisdiction here. This argument lacks any merit and must be denied.

As a preliminary matter, courts in the Third Circuit have expressed extreme skepticism at Rule 12(b)(2) TCPA challenges based on purported denials of liability at the pleadings stage, such as based on whether companies are *alter egoes* of each other, or, as here, dispute what company committed the allegedly tortious conduct. *See, e.g.*, *Newell v. Strategic Admin. Grp., Inc.*, No. 2:20-CV-00967-JDW, 2020 WL 12770854, at *1 (E.D. Pa. May 6, 2020); *Abramson v. Agentra, LLC*, Civ. A. No. 18-615, 2018 WL 6617819, at * 4 (W.D. Pa. Dec. 18, 2018); *Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855, at *4 (W.D. Wash. July 12, 2017) (allowing claim against call vendor to proceed when third party initiated the call at issue). If anything, those facts, including whether there is a case for direct or vicarious liability, ought to be sorted out in discovery. Indeed, as Judge Wolson eloquently observed in *Newell* in rejecting an argument nearly identical to that here that a third party placing the call divested it of jurisdiction, "Because the TCPA could impose vicarious liability on SAG for a call made to Pennsylvania, SAG has the requisite minimum contacts with Pennsylvania to give rise to personal jurisdiction." *Id.* at *2 (citing *Abramson*). And, cutting to the heart of LiveFree's fair play and substantial justice argument, the Court observed:

> The Court also concludes that the maintenance of the suit in Pennsylvania does not offend traditional notions of fair play. SAG authorized a vendor to sell its policies without geographic restriction. It was foreseeable that SAG's calls might violate the TCPA in any jurisdiction to which a call was placed. Moreover, the relative burdens of litigating favor forcing a company that makes a call to litigate in the district where the call was made, rather than forcing the consumer that receives the call to litigate in the district where the seller happens to reside.

*Id.*

Judge Savage's recent decision in *Havassy v. Keller Williams Realty, Inc.*, is particularly

noteworthy because, just as here, the defendant attempted to argue the lack personal jurisdiction couched in the denial of an agency relationship. As Judge Savage observed in *Havassy*:

> WRI denies any direct connection between it and Hewitt and Houston, arguing that they work with an independent market center. KWRI does not require independent realtors to participate in any KWRI training. KWRI claims Hewitt and Houston, as independent realtors, communicate with customers for their own benefit. These contentions are belied by the control KWRI dictates in the licensing agreement.
>
> That KWRI employees did not make the phone calls does not mean KWRI had no connection to them. Houston and Hewitt, as prescribed in KWRI's guidelines, used KWRI's name when they called potential customers and identified themselves as associated with "Keller Williams." KWRI controls all advertising and marketing that the Keller Williams Bethlehem office and its agents, Houston and Hewitt, perform using KWRI's name. Using the Keller Williams logo and the Keller Williams domain in their email addresses enhances KWRI's brand and consequently its profits. . . . Hence, we conclude that KWRI's conduct is related to Havassy's claims.

No. CV 21-4608, 2024 WL 1640984, at *6–*7 (E.D. Pa. Apr. 16, 2024) (cleaned up). So too here, where IBAN was *exclusively* calling to market LiveFree's products and services for LiveFree's benefit, where LiveFree stated that IBAN was "the same company," where LiveFree charged the Plaintiff's credit card with a Pennsylvania address, and where LiveFree sent its own equipment from its own address.

At this point, it would be inappropriate for the Court to conclude that it does not have specific personal jurisdiction over LiveFree, especially on the additional facts alleged here, Mr. Weingrad's declaration, LiveFree's own admissions on the day of this response, and the limited information adduced in the jurisdictional discovery period showing ratification (as well as the contents of the agreement between LiveFree and IBAN which IBAN had said it would produce but didn't), all tend to cut in favor of agency and by extension purposeful direction into Pennsylvania.

Moreover, Defendant LiveFree's faulty argument that this Court cannot find agency because the calls at issue were allegedly placed through another third party have likewise also

already been rejected by this Court multiple times. *Perrong v. Chase Data Corp.*, No. CV 22-2628, 2024 WL 329933, at *2 n.1 (E.D. Pa. Jan. 26, 2024) ("Perrong also states plausible claims against Chase Data under a vicarious liability theory. . . . The allegations that Chase Data owned and operated the phone numbers used for the calls and worked closely with its purported clients in placing the calls, give rise to an inference that it had actual authority to act on Chase's clients' behalf."). As an initial matter, as outlined above, the evidence adduced thus far gives rise, at the very least, to a ratification theory, and LiveFree's own employee statements manifest apparent authority. And there, as here, even *if* this Court were to assume, improperly, that LiveFree had nothing to do with the calls the Plaintiff received (not least of which because LiveFree, not IBAN, charged Plaintiff's credit card during the call), LiveFree may still be vicariously liable for the TCPA violations, thus subjecting it to personal jurisdiction here. This is so because, under the TCPA, "a party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification. *Klein v. Just Energy Group*, No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *27 (W.D. Pa. June 29, 2016).

For that matter, it also does not matter that IBAN presumably placed the calls, only then to sell LiveFree's products and services exclusively. Indeed, another court recently denied a motion to dismiss vicarious liability based TCPA claims for this exact reason—because the defendant actually participated in the telemarketing calls at issue, including by speaking directly with the plaintiff, just as here, where LiveFree *told the Plaintiff that it is the same company*:

> Plaintiff has made a prima facie showing of an agency relationship based on actual authority. Her Amended Complaint provides specific allegations regarding Mutual of Omaha's ability to control the third party's telemarketing methods…These allegations are similar to those made in other TCPA cases in this Court. *See Hossfeld v. Gov't Emples. Ins. Co.*, 88 F. Supp. 3d 504, 507 (D. Md. 2015) ("Plaintiffs allege that 'in order to accept telemarking call transfers, sellers must tell their telemarketers and lead generators the speed and volume of calls so that its operators do not become overwhelmed.'")

> Additionally, just as in *Hossfeld*, plaintiff has alleged that she received calls from an unidentified third-party telemarketer hired to sell branded products of another company who had control over the telemarketer's practices with respect to selling its products. . . . Plaintiff also alleges that during the "solicitation", Mutual of Omaha's insurance services "were promoted." Moreover, she was then transferred to Eric Chambers, who identified himself as an employee of Mutual of Omaha.

*Jones v. Mutal of Omaha Ins. Co.*, 639 F. Supp. 3d 537, 551 (D. Md. 2022) (cleaned up).

And there, as here, even *if* this Court were to assume that LiveFree had nothing to do with initiating the calls Plaintiff received, LiveFree is still vicariously liable for the TCPA violations, thus subjecting it to personal jurisdiction here. This is so because, under the TCPA, "a party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification. *Klein v. Just Energy Group*, No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *27 (W.D. Pa. June 29, 2016). And, as outlined above, the Plaintiff has alleged viable theories of both apparent authority and ratification.

C.  *The facts pled here support a finding of personal jurisdiction under the traditional analysis.*

There exist two types of personal jurisdiction: general and specific. Specific personal jurisdiction exists when the defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or related to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). General personal jurisdiction exists when the defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic." *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 416 (1984).

As a preliminary matter, the Plaintiff does not contest that this court lacks *general* jurisdiction over Defendant LiveFree. As the Declaration of Joshua Chandler makes clear, LiveFree is a Delaware corporation with its principal place of business in Idaho. And though Defendant may not subject to *general* personal jurisdiction here, Defendant is unquestionably

subject to *specific* personal jurisdiction here. Generally speaking, a federal court may assert *specific* personal jurisdiction over a nonresident defendant when it commits "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Furthermore, the plaintiff's claims "must arise out of or relate to the" defendant's contacts with the forum. *Helicopteros*, 466 U.S. at 414. To demonstrate purposeful availment, the plaintiff need only show (1) that the defendant conducted some activity in the forum so as to subject it to personal jurisdiction there and (2) that the constitutional notions of fair play and substantial justice are satisfied such as to be consistent with due process requirements. *Burger King*, 471 U.S. 462, 464 (1985). This Court exercises personal jurisdiction over a nonresident defendant of the forum state to the maximum extent authorized by the law of the forum, usually as dictated by the state's long arm statute. FED R. CIV. P. 4(e), (k)(1).

The first subpart of demonstrating purposeful availment is satisfied here. The Pennsylvania long-arm statute reflects a purpose to assert jurisdiction over a nonresident defendant to the fullest extent permitted by the Due Process Clause of the Fourteenth Amendment. *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 201 (3d Cir. 1998). Significantly, the Third Circuit has found purposeful availment coterminous with the limits of the Due Process Clause under three measures relevant to the case at bar. First, Defendant LiveFree has transacted business in Pennsylvania, including by charging the Plaintiff's credit card *itself* with a Pennsylvania billing address during a call to a Pennsylvania telephone number. 42 PA. CONS. STAT. § 5322(a)(1)(ii), (iii), (iv). It has spoken with a Pennsylvania telephone number and stated that IBAN and LiveFree are the same company. It has knowledge of *multiple* complaints from Pennsylvania residents concerning IBAN's telemarketing conduct, but still

12

inexplicably continues to do business with IBAN, *to this very day* having its telephone representatives tell callers that IBAN and LiveFree *are the same company*. Moreover, under existing TCPA-specific case law, as will be addressed below, the Defendant caused harm in Pennsylvania both by its acts and omissions within Pennsylvania (such as by directing the calls and doing business with to Pennsylvania area codes, as well as spoofing Pennsylvania IDs) and outside Pennsylvania (such as by engaging in business with IBAN and knowingly ratifying its illegal conduct despite complaints from PA residents). 42 Pa. Cons. Stat. § 5322(a)(3), (4). And, on a pure analysis of whether LiveFree "regularly" conducts business in Pennsylvania, LiveFree has stated that somewhere between one to four percent of its business is attributable to Pennsylvania, which is sufficient under *Canter*, *supra*.

To allow Defendant to escape liability at the pleadings stage on jurisdictional grounds for actions it allegedly did not commit would take a hatchet the TCPA and the Supreme Court's recent decision in *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct*. 141 S. Ct. 1017 (2021). In *Ford*, a Montana resident passed away as a result of an accident the plaintiff claimed to be a result of Ford's negligence. *Id. at 1023*. Ford moved to dismiss based on a lack of personal jurisdiction. *Id.* Although it correctly denied general jurisdiction because it was headquartered in Michigan and was incorporated in Delaware, it also denied specific jurisdiction because the car was assembled in Kentucky, sold by a Ford dealer in Washington, then sold by third parties, not Ford, in Oregon, and then to the Montana resident. *Id.* Ford argued, as Defendant does here, that a break in the *causational* chain, such as allegedly not having placed the call or sold the car to the injured party, also broke the *jurisdictional* chain. *Id.* at 1024.

Not so. The Supreme Court rejected the same causation-only approach proffered by both Ford and Defendant. In so doing, it clarified that an alleged break in the chain of *causation*, such

as (allegedly) not having placed the calls at issue here, akin to not having sold the car at issue

into Montana, does *not* break the chain of *jurisdiction*, which is subject to its own analysis,

*irrespective* of the causational elements of the case. Defendant, like Ford, cannot deny that it

stood ready to provide its services to Pennsylvania residents and to benefit their own business.

*Cf. id.* at 1029. Nor can the Defendant deny that it did not know that it was dealing with an

Pennsylvania resident and that it would be subject to suit here if, for example, LiveFree was

negligent in its monitoring by calling paramedics in the wrong Boro. Because the Defendant is

unquestionably subject to specific personal jurisdiction here for selling its products, the

Defendant is also subject to specific personal jurisdiction because of related marketing conduct.

 And nothing about the exercise of jurisdiction against the Defendant here would offend

traditional notions of fair play and substantial justice or at all be inconsistent with constitutional

due process. The crux of the constitutional "due process analysis" is "foreseeability," "the

defendant's conduct and connection with the forum State are such that he should reasonably

anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S.

286, 297 (1980). The Due Process Clause gives a degree of predictability to the legal system that

allows potential defendants to structure their primary conduct with some minimum assurance as

to where that conduct will and will not render them liable to suit. *Id.* "When a corporation

purposefully avails itself of the privilege of conducting activities within the forum State, it has

clear notice that it is subject to suit there." *Id.* (cleaned up). There can be no doubt that

Defendant stood ready to serve a market for its goods and monitoring services to residents here.

And the Plaintiff's case arises out of advertising for the very same business, goods, and services.

 Second, the circumstances of the calls themselves demonstrate purposeful availment and

demonstrate that the Plaintiff has suffered an injury in Pennsylvania arising out of a tort

14

committed in Pennsylvania. Defendant improperly applies outdated "stream of commerce" law in an effort to show that it is not subject to personal jurisdiction here. But that analysis is improper because the Plaintiff does not sue LiveFree out of a product defect, for instance. Rather, as explained, the Plaintiff sues LiveFree because of *telemarketing conduct*, for which it is either directly or vicariously liable, as will be described below.

And, putting aside the fact that Defendant regularly conducts business in Pennsylvania and has been sued and complained about multiple time arising out of illegal telemarketing calls to Pennsylvania residents, the circumstances of the calls themselves, the discovery adduced, and the call made by the Plaintiff, all demonstrate purposeful availment and demonstrate that the Plaintiff has suffered an injury in Pennsylvania arising out of a tort committed in Pennsylvania. The Plaintiff sues LiveFree because of *telemarketing conduct* directed at Pennsylvania, for which it is either directly or vicariously liable, as will be described below.

### D. TCPA-Specific caselaw also supports the exercise of jurisdiction here.

District Courts throughout the United States, including this Court, have agreed in the TCPA context and have held that *identical* allegations are sufficient to give rise to the inference that an "injury" occurs in the state with a particular area code when the telephone call is received there. *Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 WL 1506378, at *7 (E.D. Pa. Apr. 5, 2019). Defendant has cited to *no* TCPA-specific authority holding that there is no personal jurisdiction in the state where a recipient receives a call deliberately directed to that recipient's in-state phone number, even if the call was initiated by a third party. *Newell*, 2020 WL 12770854 at *2. This is for good reason, because no such cases exist. *Every court* to consider the issue has held that there is personal jurisdiction against individuals who place such calls. *Id.*

15

In TCPA cases, courts find that specific personal jurisdiction exists when a defendant, or their agent, sends a message into the forum state by targeting a phone number with an area code that is associated with that forum. *See, e.g.*, *Abramson*, 2018 WL 6617819, at * 4 ("Agentra purposefully aimed its conduct at Pennsylvania by contacting directly Abramson's Pennsylvania mobile and residential telephone numbers."); *Abramson v. CWS Apt. Homes, LLC*, No. 16-426, 2016 U.S. Dist. LEXIS 146627, at *6 (W.D. Pa. Oct. 24, 2016) (holding allegations that defendant targeted Pennsylvania area codes sufficient); *Baker v. Carribean Cruise Line, Inc.*, No. CV 1308246-PCT-PGR, 2014 U.S. Dist. LEXIS 28960, 2014 WL 880634, at *2 (D. Ariz. Mar. 6, 2014) (holdings as sufficient for personal jurisdiction the allegation that "Defendant made calls to Plaintiff's Arizona [cell phone] number and the fact that those calls are the basis for Plaintiff's claims."). Here, the Plaintiff respectfully submits that the jurisdictional evidence adduced, together with the Plaintiff's declaration, demonstrates that IBAN was acting as LiveFree's agent when it placed the calls to Pennsylvania numbers, including Plaintiff's.

Defendant's argument for why there exists no specific personal jurisdiction rests entirely on the faulty premise that the Defendant did not directly place any of the calls and therefore did not direct its conduct into Pennsylvania. A nearly identical argument to this one was summarily rejected recently in *Ackerman v. Fuego Leads, LLC*, No. 4:23-CV-61, 2024 WL 2136281, at *2 (E.D. Va. May 13, 2024) (holding defendant was subject to specific personal jurisdiction in Virginia when it authorized *a third party* to send calls into Virginia). By directing calls to a Pennsylvania resident possessing a Pennsylvania phone number, including *by accepting a credit card payment* associated with Pennsylvania during the call, and billing the Plaintiff's Pennsylvania credit card directly, Defendant has purposely availed itself of Pennsylvania and its laws. *See Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993)

("Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction." (cleaned up)). And it is the argument that this Court rejected in *Murch*, *supra*.

For what it's worth, this conduct further demonstrates that the exercise of jurisdiction here hardly runs contrary to traditional notions of fair play and substantial justice. *Newell*, 2020 WL 12770854 at *2. With respect to the fair play analysis, "when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 114 (1987). Plaintiff clearly has an interest in obtaining relief under the TCPA, and Pennsylvania has an interest in protecting its residents. *Shelton*, 2019 U.S. Dist. LEXIS 59235, at *24; *Newell*, 2020 WL 12770854 at *2. As the *Traylor* Court observed:

> Additionally, finding an agency relationship between Q Synergy and LiveFree at this stage of litigation comports with the language and purpose of the TCPA. The FCC has ruled that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call," *In Re Dish Network, LLC*, 28 F.C.C.R. 6574, 6589 (2013) (quotation omitted), and that this reading of the TCPA is necessary to ensure it functions as an "effective remedy," *id.* at 6591. The FCC was clear that "allowing [a] seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions." *Id.* at 6588. Following the FCC's ruling, courts have found vicarious liability for parties engaging third-party telemarketers under federal common law agency principles. *See, e.g.*, *Rosenberg v. LoanDepot.com LLC*, 435 F.Supp.3d 308, 325 (D. Mass. 2020); *see also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) (stating court had "no cause to question" FCC's decision).

*Traylor v. Livefree Emergency Response Inc.*, 2024 WL 4943042, at *4. Plaintiff has alleged facts which, if true, unquestionably give rise to the exercise of specific personal jurisdiction in Pennsylvania with respect to the illegal calls complained of. Those allegations are further supported and uncontradicted by the jurisdictional discovery developed in this case, as well as

the Plaintiff's own jurisdictional affidavit. The Defendant's entire motion is premised on a problem of its own devising and especially stretches credulity given the Defendant's own admissions as well as the evidence adduced (and refused to be adduced) in jurisdictional discovery, all of which put this case on the same, if not better, footing than *Traylor*. Defendant cannot now claim that the way it allegedly structured its business should mean that it wins because the Plaintiff has failed to plead sufficient facts such as to demonstrate the contractual nature of its agreement between IBAN that it refuses to produce. Those questions, including the evidence adduced thus far, show that dismissal on jurisdictional grounds is improper, not least of which because, including as mentioned in Plaintiff's original briefing and confirmed through discovery, that LiveFree had actual notice of illegal conduct involving IBAN *from multiple people* as long as three years ago and *to this day* tells customers that it is the same company.

This Court should reject LiveFree's attempt to escape liability through a smoke-and-mirrors game of corporate sophistry which ignores the sufficient facts pled in the Plaintiff's complaint, as well as demonstrated through the additional discovery outlined herein, demonstrating that LiveFree is liable for the conduct alleged either directly or on any one of the three commonly accepted principals of agency. Not only has Plaintiff alleged that he received a call to his Pennsylvania number, but also that *Defendant LiveFree*, not IBAN, charged him on the call. Defendant LiveFree knew of problems with IBAN *from Pennsylvania residents*, but did nothing, to this day telling customers that it is the same company. A defendant that has accepted the privileges of directing business at the forum state has also accepted the burden of appearing before its courts, even if they have never physically entered the forum state. *Burger King*, 471 U.S. at 476. Here, the plaintiff need only make out a *prima facie* case of personal jurisdiction and he has unquestionably done so under the wealth of TCPA-specific case law holding the same.

Although the Plaintiff respectfully submits that the record here in unambiguous and that the Plaintiff has made out a *prima facie* case supporting the exercise of specific personal jurisdiction under TCPA-specific case law, the Plaintiff respectfully submits that the Defendant's conduct during the jurisdictional discovery period means that the Defendant ought to forfeit its contestation of personal jurisdiction and this case proceed on to discovery.

E. *The discovery adduced thus far shows that LiveFree is vicariously liable for any actions taken by IBAN under at least implied actual authority, apparent authority, and ratification theories.*

As described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged the Defendant's involvement in the calls. He has done so by investigating them, receiving credit card charges selling LiveFree's products, and the other evidence showing that IBAN was acting as LiveFree's agent, as in *Traylor*. As the Court noted in that case, where the contract *was* produced, unlike here, where the Defendant has promised to produce and has not, requiring a putative TCPA plaintiff to allege more as to the precise nature of agency would eviscerate the TCPA's protection and would simply allow defendants to run rampant with all manner of anonymous and unidentified calls. The Defendant's standard provides a perverse incentive for a caller to conceal their identity by making it impossible for any plaintiff to prove a claim against the defendant at the pleadings stage based on a lack of information and evidence.

But even if this Court were to dive into a vicarious liability analysis, LiveFree would be liable under theories of apparent authority, and ratification, as well as implied actual authority. These vicarious liability principles apply to a company who participated in or authorized another entity, like IBAN, to perform the violative conduct, even when the seller did not directly commit the violative conduct or even place the calls at issue. *E.g.*, *Callier v. Nat'l United Grp., LLC*, No.

19

EP-21-CV-71-DB, 2022 WL 4088205, at *6–7 (W.D. Tex. Sept. 6, 2022) (imposing vicarious personal liability on an individual insurance agent who was responsible for writing an insurance policy based on an illegal call initiated by an unrelated, unnamed caller).

"[A] party may be liable under the TCPA in accordance with tort-related vicarious liability rules," including actual authority, apparent authority, and ratification principles. *Klein v. Just Energy Grp., Inc*., No. CV 14-1050, 2016 WL 3539137, at *9 (W.D. Pa. June 29, 2016). A plaintiff is required to allege a sufficient basis for any "one of the common law agency theories." *Cunningham v. Cap. Advance Sols., LLC*, No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590, at *17-21 (D.N.J. Nov. 20, 2018). The existence of an agency relationship is normally one for the trier of fact to decide. *Zeno v. Ford Motor Co.*, 480 F. Supp. 2d 825, 846 (W.D. Pa. 2007). Nor is the contract's language dispositive, as the Third Circuit has observed that a written contract is "not determinative of the matter, for it is the actual practice between the parties that is crucial." *Jones v. Century Oil U.S.A., Inc.*, 957 F.2d 84, 87 (3d Cir. 1992).

 For this reason, "[A] plaintiff is not required to plead all of its evidence in the complaint in order to plausibly allege agency." *Dolemba v. Ill. Farmers Ins. Co.*, 213 F. Supp. 3d 988, 996 (N.D. Ill. 2016). A plaintiff must only "allege a factual basis that gives rise to an inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Mauer v. Am. Intercontinental Univ., Inc.*, 2016 U.S. Dist. LEXIS 120451, at *2 (N.D. Ill. Sep. 7, 2016). And a 2013 FCC ruling holds that called parties may obtain "evidence of these kinds of [agency] relationships . . . through discovery, if they are not independently privy to such information." *In re DISH Network*, 28 FCC Rcd. 6592-93 ¶ 46.

For TCPA claims specifically, there is a low bar to pleading vicarious liability, as a plaintiff is *not expected* to allege "facts suggesting that" the defendant: (1) "instructed" the

putative agent "to make the call to" the plaintiff, (2) "had any authority over the time, means and manner of" the putative agent's solicitations, or (3) "had the ability to issue instructions … on these subjects." *Dolemba*, 213 F. Supp. 3d at 997 ("But Farmers does not suggest how Dolemba could reasonably be expected to know those facts at this stage in the litigation. Indeed, it is likely that all of the documents and information that establish (or refute) the details of the agency relationship between Farmers and the Lombardi Agency are exclusively within the Defendants' custody and control."); *see Cunningham v. Rapid Response Monit. Servs.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) ("Cunningham has investigated the parties extensively, but inevitably some aspects of their relationships will only come to light in discovery."). Thus, for a TCPA claim, a plaintiff sufficiently pleads that a defendant directed an agent's calls by alleging facts giving rise to an inference that the defendant was "involved" in the "sales practices and marketing procedures." *United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 922-923 (C.D. Ill. 2017); *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be sufficient to prove any theory of vicarious liability.  They are more than sufficient, however, to entitle Dolemba to further discovery.").

And here, the limited authority adduced, which doesn't even include LiveFree's contract with IBAN, shows that the Plaintiff has pled sufficient facts to infer an agency relationship. Those allegations are based, in large part, on three salient facts. First, LiveFree has had multiple years of complaints from Pennsylvania residents regarding IBAN's illegal telemarketing conduct, but in the fact of that, did nothing. Second, and relatedly, LiveFree's employees tell people who call the number on the materials included with the device Plaintiff received that LiveFree and IBAN are the same company. Finally, the facts and marketing arrangement at issue here appear to be identical to that in *Traylor*, even putting aide the fact that LiveFree has not

21

produced its contract with IBAN, which Plaintiff suspects is identical to the contract at issue in that case.

The essence of the IBAN-LiveFree relationship was that IBAN was to call people and attempt to sell LiveFree's emergency monitoring equipment and services. If, and only if, LiveFree had a customer interested in making a purchase, it would then "purchase" the equipment from IBAN as a dealer, but IBAN would handle everything from start to finish, including shipping, customer service, and even the credit card processing.

A litany of other courts has agreed and applied nearly identical reasoning in applying vicarious liability to circumstances similar to those here, where one party's goods are sold through a lead generator sales process. *See, e.g.*, *Cunningham v. Wallace & Graham*, No. 1:24-CV-00221, 2024 WL 4826798, at *3 (M.D.N.C. Nov. 19, 2024) ("The complaint alleges that Sokolove partnered with Wallace & Graham to solicit Camp Lejeune claimants through telemarketing efforts and that Wallace & Graham and Rhine Law Firm were both signatories of the proposed retainer agreement sent to Cunningham after the calls. These allegations, which must be accepted as true, provide a sufficient basis for 'draw[ing] the reasonable inference that the defendant[s] [are] liable for the misconduct alleged.'"); *Bumpus v. Realogy Brokerage Grp. LLC*, No. 3:19-CV-03309-JD, 2022 WL 867256, at *7 (N.D. Cal. Mar. 23, 2022) (certifying TCPA class against brokerage for actions of purportedly independent agents); *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2021 WL 1375837, at *5 (N.D. Cal. Apr. 12, 2021) ("The Court finds that Defendant is vicariously liable for calls made by its corporate sales associates and agents based on apparent authority."); *McMorrow v. Core Properties, LLC*, No. 4:23-CV-00126-JAR, 2023 WL 8697795, at *13 (E.D. Mo. Dec. 15, 2023) ("[T]he Court finds that Plaintiff has established that Core Properties provided apparent authority to 1000 CAD to

send the text messages to Plaintiff."); *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *6 (M.D.N.C. July 22, 2020) ("At this stage of the proceedings, Hayhurst has sufficiently alleged an agency relationship between Keller Williams and the individuals who called him.").

The aforementioned facts support the exercise of vicarious liability under implied actual authority, apparent authority, and ratification theories. An agency relationship "arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006); see also *Krakauer*, 925 F.3d at 659-660 (stating the same and citing the Restatement). "Once such a relationship is formed, 'traditional vicarious liability rules ordinarily make principals . . . vicariously liable for acts of their agents . . . in the scope of their authority.'" *Id.* at 660 (*quoting Meyer v. Holley*, 537 U.S. 280, 285-86, 123 S. Ct. 824, 154 L. Ed. 2d 753 (2003)). "An essential element of agency is the principal's right to control the agent's actions", but this concept of control "embraces a wide spectrum of meanings", including "what the agent shall and shall not do, in specific or general terms." Restatement (Third) of Agency § 1.01 cmt f. "A principal's control over an agent will as a practical matter be incomplete because no agent is an automaton who mindlessly but perfectly executes commands." *Id.*

**Actual Authority**

"An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." Restatement (Third) of Agency § 2.01. Actual authority may be given expressly—such as when the principal states "in

very specific or detailed language" how an agent is to act—or impliedly—such as when an agent

acts "in a manner in which [the] agent believes the principal wishes the agent to act based on the

agent's reasonable interpretation of the principal's manifestation in light of the principal's

objectives and other facts known to the agent." *Hayhurst v. Keller Williams Realty, Inc.*, 2020

WL 4208046 at *5 (denying motion to dismiss in TCPA vicarious liability case); see

*Cunningham*, 251 F. Supp. 3d at 1199 ("The question of whether implied authority may have

existed would require the Court to know more about the course of the parties' dealings and the

generally expected course of business ….").

Actual agency "does not require the principal to specify the singular acts for which her or

her authority exists as long as the acts are incidental to or reasonably necessary to accomplish

what is authorized." *Harrington v. Roundpoint Mortg. Servicing Corp.*, 2017 U.S. Dist. LEXIS

55023, at *21 (M.D. Fla. Apr. 10, 2017). "The concept of scope of authority is broad. An agent

has authority to act to further the principal's objectives, as the agent reasonably understands the

principal's manifestations and objectives. The principal is liable for the acts of the agent to

further the principal's purposes unless the agent acts entirely for the agent's benefit only."

*United States v. Dish Network LLC*, 256 F. Supp. 3d 810, 923 (C.D. Ill. 2017) (citing

Restatement (Third) of Agency § 2.02(1)). Thus, for a TCPA claim, a plaintiff sufficiently pleads

that a defendant actual directed an agent's calls by alleging facts giving rise to an *inference* that

the defendant was "involved" in the "sales practices and marketing procedures." *United States*,

256 F. Supp. at 922-923; *Dolemba*, 213 F. Supp. 3d at 997 ("Of course, these facts may not be

sufficient to prove any theory of vicarious liability. They are more than sufficient, however, to

entitle Dolemba to further discovery.").

Here, the Plaintiff has more than adequately pled facts giving rise to such an inference,

including by the involvement in LiveFree at every step of the sales process from start to finish, together with LiveFree's own admission to customers that it was manifestly the "same company" as IBAN. As such, LiveFree went so far as to instruct its employees to disclaim the true nature of IBAN's involvement that it purportedly alleges occurred here and is allegedly actually the case, that of a purportedly "independent" sales entity that it exercised no control over. As the Restatement itself cautions, the critical concept of *control* in an agency relationship is not so narrow as to be limited to the express terms of agency in the parties' agreement or even the express scope of authority but extends to encompass direction of "what the agent shall and shall not do, in specific or general terms." Restatement (Third) of Agency § 1.01 cmt f.; *Jones*, 957 F.2d at 87. The aforementioned conduct suffices to establish implied actual authority at the pleadings stage, including on the basis of the principal's own manifestations to a third party.

**Apparent Authority and Ratification**

Apparent authority "arises when a third-party reasonably believes that the [] agent had authority to act on behalf of the principal and that belief can be traced to the principal's own manifestations." *In re Fresh & Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho 2011). Apparent authority can exist even where, unlike here, a principal does not communicate directly with a consumer. *See Hayhurst*, 2020 WL 4208046 at *8 ("Although Keller Williams is not alleged to have made any statements directly to Hayhurst, it is not required to do so. Rather, its manifestations must be 'traceable' to it even if it did not make them directly to Hayhurst. And, its manifestations 'may take many forms'.").

"Ratification occurs when a principal knowingly chooses to accept the benefits of unauthorized actions an agent takes on the principal's behalf." *Aranda v. Caribbean Cruise Line, Inc.*, 179 F. Supp. 3d 817, 833 (N.D. Ill. 2016); Restatement (Third) of Agency § 4.01(1) (2006)

25

cmt. d. ("Ratification does not require a pre-existing formal agency relationship.").

"[R]atification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act. It is necessary that the actor have acted or purported to act on behalf of the ratifier." Restatement (Third) of Agency § 4.01 cmt. b; *see Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1075 (9th Cir. 2019) (citing the Restatement and holding in a TCPA action that "ratification may create an agency relationship when none existed before the acts are 'done by an actor … who is not an agent but pretends to be.'"). To demonstrate prospective ratification, a plaintiff must show that a principal had full knowledge of all the facts, *or* was willfully ignorant of those facts, and manifested an intention to ratify the act in question, *or* that an agent acted for a principal's benefit and the principal "fail[ed] to object or repudiate an action." *Henderson*, 918 F.3d at 1074-75; *Aranda*, 179 F. Supp. 3d at 831.

Here, Plaintiff sufficiently pleads Defendants' vicarious liability predicated on apparent authority and ratification theories based on the same allegations supporting an actual authority theory, as well as an apparent authority theory based on continued business with IBAN, despite knowledge of IBAN's illegal calling conduct. Specifically, with regard to *apparent* authority, it is and was reasonable for Plaintiff to believe that LiveFree authorized IBAN to send calls on its behalf because it continues to do business with IBAN, despite the fact it knew of multiple complaints arising out of its relationship with IBAN. Not only does it continue to do business with IBAN, including *after IBAN is in default in this litigation and has not appeared*, but it shockingly ratifies IBAN's conduct by telling customers that LiveFree and IBAN are the same company. And, as the citations above confirm, LiveFree ratified IBAN's illegal conduct by not only refusing to terminate them, but doubling down on the relationship *to this day*.

As a result, LiveFree was directly involved in the calls by not only getting *exactly* what

was intended from them—the opportunity for LiveFree to promote and sell its personal alarm systems to potential new customers obtained through illegal telemarketing, like the Plaintiff, but from a vendor that it has received *numerous* complaints about, has not appeared in this litigation, but inexplicably continues to do business with. *See, e.g.*, *Aranda v. Caribbean Cruise Line, Inc.*, 179 F.Supp. 3d 817, 833 (N.D. Ill. 2016) (sellers ratified telemarketers' conduct by accepting the benefits of the unlawful calls in TCPA case); *Keim v. ADF Midatlantic, LLC,* 2015 WL 11713593, at *8 (S.D. Fl. 2015) (allegations sufficient to state a claim where seller accepted the benefits of the conduct by having text messages sent on its behalf to phone numbers obtained on its behalf); *Abante Rooter & Plumbing, Inc. v. Alarm.com, Inc.*, 2018 U.S. Dist. LEXIS 132078 (N.D. Cal. 2018) (a reasonable jury could find defendant liable on ratification theory where "Alarm.com knew of Alliance's allegedly illegal telemarketing conduct and accepted the benefits therefrom"). As a result, Plaintiff sufficiently alleges Defendant's vicarious liability based on apparent authority and ratification based on manifestations traceable to and benefits derived directly by both Defendants, including in the course of Plaintiff's investigation and discovery.

## IV.  CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety or permit amendment as necessary.

RESPECTFULLY SUBMITTED AND DATED this July 14, 2025.

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that I filed the foregoing via ECF on the below date.

I further certify that I mailed a copy of the foregoing to:

IBAN Global, LLC
3411 Hawthorne Road
Pocatello, ID 83201[1]


Dated: July 14, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

---

[1] Note that this is the same address as LiveFree. To date, none of the letters Plaintiff's counsel has delivered addressed to IBAN at this address have been returned as undeliverable.